FERDINAND PENLEY

vs.

THE MAINE CENTRAL RAILROAD COMPANY.

Androscoggin.    Opinion, September 1, 1898.

*Way. Culvert. Town. Railroad. R. S., c. 18, § 27; Stat. 1889, c. 282, Spec. Laws, 1845. c. 270; 1856, c. 651.*

In 1847 the Androscoggin and Kennebec Railroad Company located its road across a highway in Auburn and across a brook known as Barron Brook. Subsequently, having obtained from the county commissioners upon its own petition, a change of location of the highway, to facilitate the crossing of the railroad, it built its railroad across the highway by an over-head bridge, and built a culvert diagonally across the highway to give passage to the waters of the brook. By virtue of Chapter 651, Special Laws of 1856, the defendant company succeeded to the privileges and franchises and became subject to the burdens and liabilities of the first named company. The over-head crossing and culvert were maintained by the Androscoggin & Kennebec Railroad Company until its consolidation with the defendant company and have since been maintained by the defendant company. *Held;* that the defendant company is liable to the plaintiff for damages sustained by him by reason of the insufficient size of the culvert.

ON EXCEPTIONS BY DEFENDANT.

This was an action on the case to recover damages for the obstruction of an ancient water course in the city of Auburn. The jury returned a verdict for the plaintiff and the defendant excepted to the instructions of the presiding justice to the jury, which are given in the opinion, upon the question as to whose duty it was to maintain the culvert of sufficient size and suitable condition on the first day of March, 1896, when the damage complained of was done.

*John A. Morrill,* for plaintiff.

At the time this culvert was constructed and as it existed until 1888, the centre of the westerly abutment was located and built directly over the culvert. After the widening of the roadway under the track in 1888, the wing wall of the westerly abutment

still projected over the culvert, and at the time of the destruction of the culvert by flood a portion of that westerly abutment fell in. The great danger which would result to the public by allowing inexperienced men even of the best intentions to undertake the repair of a culvert so located directly under the main line of a railroad company is too obvious to need argument. All considerations of public policy require that the same absolute control should be exercised by the railroad company over that portion of their location, within the lines of a highway, when the crossing is below grade as when it is at grade.

If the railroad company is not under obligation to maintain a suitable culvert under such conditions, the obligation must fall upon the municipality. The measure of liability of a municipality in the maintenance of its highways is that they should be reasonably safe for travelers. The obligation of a railroad company is greater. "They are bound to exercise that degree of care and skill which cautious persons would use in the construction by competent engineers and workmen of the road-bed, track, culverts, and all the appliances and means of transportation to carry on the business of the road and operate its trains; to make frequent, careful examinations and inspections of the same in order to avoid accidents, so far as human skill and oversight can reasonably secure such result." *Libby* v. *Maine Central Railroad Company*, 85 Maine, 34, 41.

It would certainly be unjust to the railroad company, and fraught with great danger to the public, to permit a municipality charged with the duty of only maintaining a highway reasonably safe for travelers, to interfere with the structure of the road-bed of a railroad company charged with a far higher duty toward its patrons.

Counsel also cited: *Railroad Co.* v. *Halloren*, 53 Tex. 46, S. C. 37 Am. Rep. 744; and *Gt. Western Ry. Co.* v. *Braid*, *Ib.* 749, S. C. 1 Moore P. C. (N. S.) 101.

*Wallace H. White and Seth M. Carter*, for defendants.

The defendant built the road in accordance with the directions of the county commissioners, and when this was done the town took

the piece of new road in place of the old and had the same rights and duties at the crossing that they would have had were the crossing at the old location and no alteration of the highway made. This action depends upon the failure to maintain a suitable culvert, neglect of a common law duty.

The duty to maintain the highway with proper culverts is, in the first instance, on the town. The railroad company had the right to cross the highway. That right is granted by necessary implication under the charter. Elliott on Railroads, § 1099.

The duties of a railroad company crossing a highway above grade, aside from that of maintaining the bridges and abutments, are mostly of a negative character. It must construct its track over the highway in such a manner as not to obstruct at least the traveled portions of the way, and in case it has been necessary to make any changes in such way, to restore it into a safe and proper condition for use. In other words, it must effect its crossing by such structures and appliances as will interfere with the highway to as small an extent as practical. Each has the right of passage. The town is to be left to exercise its right, as nearly as it well can be, in the same manner as it did before the building of the railroad. In some cases the embankments and abutments may be entirely outside the limits of the highway and the only interference come from the span of the bridge far above the surface of the way. The town is left free to take care of the surface of the road, to build sewers and drains, to lay water pipes, to license the laying of street railroad tracks, to build sidewalks, and in fact to use and control the street in exactly the same manner as it would if the span of steel were not suspended over it. Elliott on Railroads, § 1109.

The common law duty of the defendant did not include any responsibility on its part for the condition of the surface of the street, the water pipes, sewers, street railroad, and the like, nor did it extend to the culverts in the road, where it was crossed by an overhead bridge. The legislature has always understood this to be the rule, and declared it early by providing that the bridges and abutments, at an overhead crossing, should be maintained by the

railroad. That was the statute when this crossing was constructed and it has been the statute ever since. Later on the legislature changed the rule providing that there might be an apportionment of the expense at an overhead crossing.

Chapter 43, of the Laws of 1878, in its provisions that a determination may be had in relation to a way already laid out, whenever the municipal officers request the railroad company to build and maintain such part of the road as is within the limits of its location, shows clearly that the legislature did not understand that any duty then existed on the part of the railroad company to maintain such way. That does not sound like a statute based upon an existing liability on the part of the railroad company to absolutely maintain the street, surface, sewers, culverts and drains.

Properly understood the language of the court in *Lander* v. *Bath*, 85 Maine, 141, applies only to grade crossings. The statute there referred to by its express terms imposes upon the railroad the expense of building and maintaining so much of the way as is within the limits of such railroad in case of a grade crossing. A different provision is made by the same statute when the crossing is not at grade. Hence this statute does not cast upon the railway corporation the duty of building and maintaining so much of the street as is within the limits of the railroad except in case of a grade crossing. Therefore the case, *Lander* v. *Bath*, has no application to this action.

In this case the abutments of the railway corporation are almost entirely outside the limits of the street. There is but slight occupation of the street by the railroad, otherwise than with the iron bridge which makes a span of sixty feet. The railroad company in no way interferes with the use of this street by the city, and the statute in question clearly recognizes the fact that in this case the duty of the building and maintaining the street is not as a matter of law cast upon the railroad corporation, for it provides by express terms a method in which the question of whose duty it is to construct and repair may be determined or apportioned.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, WISWELL, FOGLER, JJ.

FOGLER, J.   This is an action on the case in which the plaintiff claims to recover damages of the defendant corporation for an alleged obstruction of an ancient water-course, known as Barron Brook, said alleged obstruction being the construction and maintenance of a culvert insufficient in size and condition to carry off the water of said brook.   In 1848, and before the construction of said railroad, the county commissioners of Androscoggin county, on petition of said railroad company, in order to facilitate the crossing of said county road by said railroad, authorized said railroad company to alter the course of said county road at its expense and according to certain conditions prescribed by the county commissioners.   There was evidence tending to prove that the Androscoggin and Kennebec Railroad Company built the county road on the new location and constructed the culvert in question diagonally across the county road within the limits of the railroad location to give passage to the waters of the brook; and that after its construction the culvert was maintained, inspected and kept clear by the railroad company.   There was no evidence that the town or city of Auburn ever maintained or repaired the culvert except on one occasion when it repaired its outlet at the request of the railroad officials and the expense of such repairs was paid by the railroad company.   At the time when the location of the county road was changed by authority of the county commissioners, the railroad company put in abutments for an over-head bridge in accordance with the requirements of the county commissioners, and in 1888 the company widened the passage way under its track and built new abutments on both sides for its over-head bridge, the wing wall of one of said abutments projecting out over the culvert for a few feet but not resting upon the culvert which was some seventeen feet below the surface of the street, the abutment being only about six feet below said surface.   The surface of the county road had been taken care of by the city officials, a sewer had been built in it by the city, water pipes had been laid in it by the Auburn

Aqueduct Company, the title to which has since passed to the city, and a street railway track has been laid through it. There was no evidence of any proceedings in relation to said crossing or the respective rights and liabilities of the railroad company and the city in relation thereto except the order of the county commissioners above referred to. The defendant corporation succeeded to the rights and duties of the Androscoggin and Kennebec Railroad by virtue of Chapter 651 of the Special Laws of 1856.

Upon the question of whose duty it was to maintain said culvert of sufficient size, and in suitable condition, the presiding justice instructed the jury as follows:

"It appears that the Androscoggin & Kennebec Railroad Company located its road across what is now known as Turner Street, and upon their petition had Turner Street changed to its present location, and that the railroad under the direction of the county commissioners in making the change built Turner Street and built the culvert complained of. Subsequently under authority from the legislature that railroad and others were consolidated in what is known as the Maine Central Railroad Company, and by the act of consolidation the Maine Central Railroad assumed all the privileges and franchises and was subjected to all the burdens and liabilities of the original corporations which were consolidated in it.

"And it appears that since the consolidation, the Maine Central Railroad Company have occupied the railroad across Turner Street and over its original location and still continue to do so, and for the purposes of this case I instruct you that the Maine Central Railroad Company is charged with the duty of maintaining a suitable culvert at that place. If the culvert existing there at the time of the consolidation was in fact insufficient and unsuitable for the place and for the purposes for which it was designed, the railroad company would be liable to the same extent as if it had been originally built by them, and you will apply the principles of law which I shall give you in regard to the duty of this defendant corporation, the Maine Central Railroad Company, as to culverts, in the same manner in which you would if they had been the original road that built and located the culvert at that place."

The jury returned a verdict for the plaintiff and the defendant excepts to the foregoing instructions.

By its Act of incorporation, Chapter 270, Special Laws of 1845, the Androscoggin and Kennebec Railroad Company was authorized and empowered to locate and construct its railroad between the termini therein named " with all suitable bridges, tunnels, viaducts, culverts, drains and all other necessary appendages." By virtue of such authority it constructed the culvert in question and maintained it until by proceedings under Chapter 651, Special Laws of 1856, the defendant corporation succeeded to the rights and duties of the Androscoggin and Kennebec Railroad Company. By the last named act the defendant corporation acquired all the powers, privileges and immunities then possessed by, and was subject to all the legal obligations then resting upon said former corporation. Since it so succeeded the Androscoggin and Kennebec Railroad Company, the Maine Central Company has maintained and operated its tracks over its original location where the culvert was constructed, and we can have no doubt that it is liable for the defective construction and condition of this culvert to the same extent that the Androscoggin and Kennebec Railroad Company would have been had it continued in the possession and management of its road, and the instructions of the presiding justice in this respect were correctly given.

The further instruction of the presiding justice to which exceptions are taken, to the effect that the defendant corporation is charged with the duty of maintaining the culvert is also correct. It is well settled that a railroad corporation which obstructs a watercourse for its purposes must provide and maintain suitable culverts or other means for the uninterrupted flow of the water; and if it neglects so to do it is liable to a party injured in an action for damages. *Rowe* v. *Granite Bridge Corp.*, 21 Pick. 348; *Proprs. of Locks and Canals* v. *Nashua & Lowell R. R.*, 10 Cush. 388; *March* v. *Portsmouth & Concord R. R.*, 19 N. H. 372; *Brown* v. *Cayuga & Sus. R. R. Co.*, 12 N. Y. 492; *Lander* v. *Bath*, 85 Maine, 141.

The case of *Lander* v. *Bath* is decisive of the case at bar.

There as here, the culvert was built and maintained by the railroad company and the city had in no way meddled therewith. The . action, like that at bar, was grounded upon the unlawful obstruction of an ancient water course.   In both cases all acts that contributed to the conditions of things were the acts of the railroad companies.   In deciding in *Lander* v. *Bath*, that the defendant city was not liable for the defective condition of the culvert, the court held by. necessary implication that the railroad company was liable.

*Exceptions overruled.*